Benjamin A. Schwartzman (SBN 02161)
BAILEY & GLASSER LLP
950 West Bannock Street, Suite 940
Boise, ID 83702
Telephone: (208) 342-4411
Facsimile: (208) 342-4455
bschwartzman@baileyglasser.com
(additional counsel listed on signature page)

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| SUNDEEP SABHERWAL, MARJORIE SABHERWAL, *on behalf of themselves and all others similarly situated*, <br><br>     Plaintiffs, <br><br> v. <br><br> GREGORY FUNDING LLC, <br><br>     Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> **Action for Breach of Contract; Fair Debt Collection Practices Act; Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 *et seq.*; Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*** |

Plaintiffs Sundeep Sabherwal and Marjorie Sabherwal (together, "Plaintiffs") on behalf of themselves and all others similarly situated, allege breach of contract, violations of the Fair Debt Collection Practices Act, violations of the Rosenthal Fair Debt Collection Practices Act, and violations of the Unfair Competition Law against

Defendant Gregory Funding LLC ("Defendant" or "Gregory"). In support of these claims, Plaintiffs state as follows:

## NATURE OF THE ACTION

1.      Following the worldwide outbreak of COVID-19, Congress passed the Coronavirus Aid, Relief and Economic Security Act ("CARES Act") to, among other things, provide some relief to millions of American homeowners struggling to make their mortgage payments as a result of the economic difficulties caused by the pandemic.

2.      On March 27, 2020, the CARES Act was signed into law. *See* Pub. L. No. 116–136, 134 Stat. 281 (2020). Section 4022 of the CARES Act allows homeowners who have experienced economic hardship as a result of COVID-19 to request a forbearance on their home loans.

3.      Upon a request by a borrower, "forbearance shall be granted for up to 180 days, and shall be extended for an additional period of up to 180 days at the request of the borrower." *Id.* at 490.

4.      Regardless of the length of a borrower's forbearance, servicers may not charge any "fees, penalties, or interest beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract" for the duration of the forbearance period. *Id.*

5.      Additional guidance from the Consumer Financial Protection Bureau ("CFPB") notes that while a borrower's regular interest will still accrue, servicers cannot

assess additional fees, penalties, or interest against a borrower's account while the account is under a CARES Act forbearance plan.

6.    Defendant Gregory services residential and commercial mortgages in the United States, including in California.

7.    Following Congress's enactment of the CARES Act, Defendant negligently, knowingly, or willfully sent misleading statements to Plaintiffs and the proposed class members, indicating, *inter alia*, that they could be subject to foreclosure if they failed to cure the delinquencies and improperly assessed late fees that accrued during their CARES Act forbearance plans by making a lump sum payment on their regular due dates—in contravention to the terms of their forbearances and relevant laws and regulations. Further, upon information and belief, Defendant did not provide Plaintiffs and the Class Members the full 180-day forbearance period required under the CARES Act. In doing so, Defendant misled its borrowers regarding their coverage and protections under the CARES Act forbearance programs, breaching their contracts and violating the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, the Rosenthal Fair Debt Collection Practices Act, and the Unfair Competition Law.

8.    Plaintiffs paid these illegal fees and bring this class action lawsuit individually and on behalf of all similarly situated putative class members to recover the unlawfully charged fees and to enjoin Defendant from continuing to charge these unlawful fees and improperly service these accounts.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over Defendant because Defendant is headquartered in Portland, Oregon where it conducts business and performed the wrongful acts giving rise to this lawsuit, as described in this Complaint.

10.    Venue is proper in this District because Defendant conducts the debt collection activities at the center of the causes of action in this District.

11.    Subject matter jurisdiction exists as the lawsuits presents a federal question under the FDCPA. Additionally, there is subject matter jurisdiction under the Class Action Fairness Act because diversity exists between the Defendant and at least one class member and the amount in controversy, upon information and belief, exceeds $5,000,000.

## PARTIES

12.    Plaintiff Sundeep Sabherwal is a natural person residing in California who had a mortgage loan serviced by Defendant during the relevant period.

13.    Plaintiff Marjorie Sabherwal is a natural person residing in California who had a mortgage loan serviced by Defendant during the relevant period.

14.    Defendant Gregory Funding LLC is an Oregon limited liability company with a principal place of business located in Portland, Oregon.

## APPLICABLE LAW

## FAIR DEBT COLLECTION PRACTICES ACT

15.    The purpose of the FDCPA is "to eliminate abusive debt collection

practices . . . and to promote consistent State action to protect consumers against debt

collection abuses." 15 U.S.C. § 1692.

16.    The FDCPA prohibits debt collectors from using "any false, deceptive,

or misleading representation or means in connection with the collection of any debt,"

which includes the false representation of "the character, amount, or legal status of

any debt." *Id.* § 1692e.

17.    The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

18.    Under the FDCPA, a "consumer" is "any natural person obligated or

allegedly obligated to pay any debt." *Id.* § 1692a(3).

19.    A "debt collector" is "any person who uses any instrumentality of

interstate commerce . . . in any business the principal purpose of which is the

collection of any debts, or who regularly collects or attempts to collect . . . debts owed

. . . or asserted to be owed or due another." *Id.* § 1692a(6).

20.    The FDCPA defines communication as "conveying of information

regarding a debt directly or indirectly to any person through any medium." *Id.* §

1692a(2).

21.    The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

**ROSENTHAL ACT**

22.    The Rosenthal Fair Debt Collection Practice Act ("Rosenthal Act") is a "remedial statute [that] should be interpreted broadly in order to effectuate its purpose." *See People ex rel. Lungren v. Superior Court*, 926 P.2d 1042, 1055 (Cal. 1996) ("[C]ivil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose."); *Komarova v. National Credit Acceptance, Inc.*, 95 Cal. Rptr. 3d 880, 892 (Cal. Ct. App. 2009); Cal. Civ. Code § 1788.

23.    The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code §1788.2(c).

24.    The Rosenthal Act defines a "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code §1788.2(f).

25.    The Rosenthal Act defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." Cal. Civ. Code §1788.2(e).

26.     The Rosenthal Act prohibits "[c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14(b).

27.     The Rosenthal Act makes it illegal for any entity covered by it to violate the federal FDCPA. Cal. Civ. Code § 1788.17.

**UNFAIR COMPETITION LAW**

28.     The UCL defines unfair business competition to include any "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

29.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

30.     In addition, a business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

**FACTUAL ALLEGATIONS**

*The Mortgage Servicing Industry*

31.     Mortgage lenders rarely service their own loans. In many cases, lenders specialize in the origination of the loan, but they are not equipped to handle the day-to-day administrative tasks that come with a mortgage. Instead of managing these duties in-house, they assign the servicing rights of their loans to a designated servicer—a company that specializes in the actual management and administration of mortgages.

32.    A mortgage servicer is a company that, in turn, handles the day-to-day administrative tasks of a mortgage loan, including receiving payments, sending monthly statements, and managing escrow accounts.

33.    Gregory is a loan servicer that operates around the country.

*Named Plaintiffs' Facts*

34.    On or around November 24, 2009, Mr. Sundeep Sabherwal and Ms. Marjorie Sabherwal, a married couple, purchased a home in Aliso Viejo, California, through a loan from Bank of America, secured by a mortgage on the property (the "Deed of Trust"). The Deed of Trust is attached as **Exhibit A.** Plaintiffs took out the mortgage loan secured by their property for personal, family, or household uses.

35.    On or around July 28, 2017, Defendant was assigned the servicing rights to the loan. As servicer, Defendant has the right to collect payments and perform services for the borrower on behalf of the lender. The Deed of Trust provides that the loan servicer possesses a "partial interest in" the Note, which may be transferred. *See* Ex. A ¶ 20. The Deed of Trust further provides that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in section 20) and benefit the successors and assigns of Lender." Ex. A ¶ 13.[1] Defendant thus became bound as an assignee to the Deed of Trust at the time it acquired the servicing rights.

---

[1] Section (or Paragraph) 20 provides: "The note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects periodic payments due under the Note and this Security

36.     When Defendant acquired Plaintiffs' mortgage, payments were overdue, and the mortgage was in default. The initial communication letter dated July 28, 2017 from Defendant stated that the entire loan was due as accelerated, which could only have been done had Plaintiff been in default at the time Defendant acquired the loan.

37.     Like other borrowers whose mortgages are serviced by Defendant, the Deed of Trust incorporates standard language from Fannie Mae model mortgages. And like other Fannie Mae mortgages, the Deed of Trust states that the servicer "may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law." Ex. A ¶ 14.

38.     "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2, ¶ (J).

39.     The Deed of Trust further states that it is "governed by federal law and the law of the jurisdiction in which the Property is located," *i.e.*, California. Ex. A ¶ 16.

---

Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There might also be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change under the Loan Servicer, Borrower will be given written notice of the change . . . . If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." Ex. A ¶ 20.

40.    Defendant is a "debt collector" within the meaning of the FDCPA and the Rosenthal Act.

41.    Defendant is a "consumer reporting agency" within the meaning of the FCRA.

42.    Plaintiffs requested that their loan be placed in a CARES Act Forbearance plan and Defendant approved such request. CARES Act, Pub. L. 116–136, 134 Stat. 281 (2020).

43.    Upon information and belief, Defendant did not give Plaintiffs' a Forbearance Plan "up to 180 days," as is required under the CARES Act and the CFPB guidelines.

44.    Despite their loan being under a CARES Act approved Forbearance Plan, however, Defendant sent misleading statements and other misrepresentations to Plaintiffs that placed them under the impression that their loan was not in active forbearance, that late charges were assessed for not paying the monthly balance, and that they owed a lump sum amounting to several times their normal mortgage payment.

45.    On June 28, 2021, Defendant sent Plaintiffs a notice of intent to foreclose ("June 2021 Notice"), stating that their "account is due for the October 1, 2020 payment and succeeding payments."

46.    The June 2021 Notice demanded payment of $48,847.17, which Defendant stated had to be paid by August 2, 2021, to cure the default.

47.     The June 2021 Notice stated that late fees were owed in the amount of $1,679.76 and these late fees were improperly charged to Plaintiffs during their CARES Act forbearance period.

48.     On June 28, 2021, Defendant also sent to Plaintiffs a letter entitled "Important Rights for Homeowners Notice of Pre-Foreclosure Options," falsely stating that if Plaintiffs did not "respond within 30 days, a notice of default may be issued and you may lose your home in foreclosure."

49.     Defendant's misleading representations throughout Plaintiffs' Forbearance Plan specified an "Amount Due" for each of the periodic payments that Plaintiffs were not obligated to pay. In the Delinquency Notice, Defendant misrepresented that Plaintiffs had an "Unpaid balance" equal to the monthly payments that they forwent pursuant to the Forbearance Plan. Nowhere in communications to Plaintiffs did Defendant explain that they were for informational purposes and that no payment was due.

50.     At all relevant times, Plaintiffs' mortgage debt was demanded by Defendant as due or owing.

51.     Absent from the mortgage statements, representations, or communications from Defendant were repayment options for Plaintiffs to exit the forbearance plan, such as those required by the CARES Act and related law—i.e., an option to defer the payment to the end of the loan, lengthen the loan term, or defer payment until the sale or refinancing of the home.

52.     In June 2021, Defendant falsely reported that Plaintiffs had $39,930.00 past due on their mortgage and that Plaintiffs were late on payments in August 2020, September 2020, October 2020, November 2020, December 2020, January 2021, February 2021, March 2021, April 2021, and May 2021. The amount demanded included late fees that Defendant was not authorized to collect. Each of the monthly payments were subject to the forbearance plan and were not due and owing as Defendant represented.

53.     Due to fears they would lose their home and have their credit scores impacted, Plaintiffs paid off the lump sump demanded in the June 2021 Notice, which included fees that were not allowed to be charged to and collected from Plaintiffs.

## CLASS ACTION ALLEGATIONS

54.     Plaintiffs bring this action on behalf of the following classes of persons, subject to modification after discovery and case development:

**Nationwide Class:**

> **All persons (1) with a residential mortgage loan securing a property in the United States, (2) serviced or subserviced by Gregory Funding LLC, (3) and who were subject to forbearance under the CARES Act and to whom, during such forbearance period, Defendant charged fees that were not allowed to be collected under the CARES Act.**

**California Subclass:**

> **All persons (1) with a residential mortgage loan securing a property in the California, (2) serviced or subserviced by Gregory Funding LLC, (3) and who were subject to forbearance under the CARES Act and to whom, during such forbearance period, Defendant charged fees that were not allowed to be collected under the CARES Act.**

55.   Class members are identifiable through Defendant's records and payment databases.

56.   Excluded from the class are the Defendant; any entities in which it has a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

57.   Plaintiffs propose that they serve as class representatives.

58.   Plaintiffs and the Class Members have all been harmed by the actions of Defendant.

59.   Plaintiffs reserve the right to amend the definition of the class if discovery or further investigation reveals that the class should be expanded or otherwise modified.

60.   Numerosity is satisfied. There are thousands of class members. Individual joinder of these persons is impracticable.

61.   There are questions of law and fact common to Plaintiffs and to the Class, including, but not limited to:

   a.   Whether Defendant breached its contracts with borrowers by charging fees violating the CARES Act;

   b.   Whether Defendant violated the FDCPA;

   c.   Whether Defendant violated the FCRA;

   d.   Whether Defendant violated the Rosenthal Act by charging fees not due;

   e.   Whether Defendant violated the UCL;

f.      Whether Defendant's business practices are unfair;

g.      Whether Defendant's business practices are unlawful;

h.      Whether Defendant serviced residential mortgages that were in forbearance;

i.      Whether Defendant threatened foreclosure if a delinquent loan was not made current via lump sum and/or made other misstatements to residential mortgage borrowers whose loans were or should have been in forbearance under the CARES Act;

j.      Whether Defendant offered full forbearance periods;

k.      Whether Defendant offered repayment plans while Plaintiffs and Class Members exited forbearance;

l.      Whether Plaintiffs and the Class Members were damaged by Defendant's conduct;

m.      Whether Plaintiffs and the Class Members are entitled to actual and/or statutory damages as a result of Defendant's actions;

n.      Whether Plaintiffs and the Class Members are entitled to restitution;

o.      Whether Plaintiffs and the Class Members are entitled to injunctive relief;

p.      Whether Plaintiffs and the Class Members are entitled to attorney's fees and costs.

62.    Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and the Class Members entered into uniform covenants in their Deeds of Trust that prohibit illegal fees. Plaintiffs and the Class Members all had a mortgage serviced by Defendant that was or should have been in forbearance under the CARES Act and received from Defendant misleading and misleadingly incomplete representations, including threatened foreclosure without offering or informing Plaintiffs and Class Members of repayment plans required by law and charging late fees for payments not due during the forbearance period.

63.    Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the Class Members, and they will adequately and fairly protect the interests of the Class Members. Plaintiffs have taken actions before filing this complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand on behalf of Class Members to protect the interests of the class.

64.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

65.    The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

## COUNT I
### Breach of Contract
### (Class and Individual Claim)

66.     Plaintiffs incorporate the preceding paragraphs by reference.

67.     Plaintiffs and the Class Members entered into contracts with Defendant. Defendant breached its contracts with Plaintiffs and Class Members when it charged late fees not agreed to in their Deeds of Trust and specifically prohibited in their Deeds of Trust.

68.     Plaintiffs purchased a home subject to the Deed of Trust. *See* Ex. A.

69.     On or around July 28, 2017, Defendant was assigned the servicing rights to the loan. As servicer, Defendant has the right to collect payments and perform services for the borrower on behalf of the lender. The Deed of Trust provides that the loan servicer possesses a "partial interest in" the Note, which may be transferred. *See* Ex. A ¶ 20. The Deed of Trust further provides that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in section 20) and benefit the successors and assigns of Lender." Ex. A ¶ 13. Defendant thus became bound as an assignee to the Deed of Trust at the time it acquired the servicing rights.

70.     Like other borrowers whose mortgages are serviced by Defendant, the Deed of Trust incorporates standard language from Fannie Mae model mortgages. And like other Fannie Mae mortgages, the Deed of Trust states that the servicer "may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law." Ex. A ¶ 14.

71.     "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2, ¶ (J).

72.     The Deed of Trust further states that it is "governed by federal law and the law of the jurisdiction in which the Property is located," *i.e.*, California. Ex. A ¶ 16.

73.     Defendant did not give Plaintiffs' a Forbearance Plan "up to 180 days," as is required under the CARES Act and the CFPB guidelines.

74.     Despite not giving Plaintiffs a full forbearance period, on June 28, 2021, Defendant sent Plaintiffs a notice of intent to foreclose ("June 2021 Notice"), stating that their "account is due for the October 1, 2020 payment and succeeding payments."

75.     The June 2021 Notice demanded payment of $48,847.17, which Defendant stated had to be paid by August 2, 2021, to cure the default.

76.     The June 2021 Notice stated that late fees were owed in the amount of $1,679.76.

77.     On June 28, 2021, Defendant also sent to Plaintiffs a letter entitled "Important Rights for Homeowners Notice of Pre-Foreclosure Options," stating that if Plaintiffs did not "respond within 30 days, a notice of default may be issued and you may lose your home in foreclosure."

78.     By not offering a full forbearance period and assessing late charges for not paying the monthly mortgage balance, Defendant violated the CARES Act, *i.e.*, federal law.

79.     By shortening the forbearance period and charging late fees in violation of federal law, i.e., the CARES Act, Defendant breached the uniform covenants of the Deed of Trust.

80.     Because the above provisions are contained in the "Uniform Covenants" section of the Deed of Trust, Defendant has breached its contracts on a class-wide basis.

81.     Plaintiffs and the Class Members were damaged by Defendant's breach.

## COUNT II
### Violations of the Fair Debt Collection Practices Act
### (Class and Individual Claim)

82.     Plaintiffs incorporate the preceding paragraphs by reference.

83.     Plaintiffs are "consumers" as defined by 15 U.S.C. § 1692a(3) because they purchased a home in California by mortgage primarily for personal, family, or household use.

84.     Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because as a servicer it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another.

85.     Additionally, Defendant began servicing Plaintiffs' mortgage while it was delinquent, based on the past due amount owed, so none of the exceptions under 15 U.S.C. § 1692a applies.

86.     The FDCPA prohibits debt collectors from misrepresenting "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(a).

87.     Defendant sent misleading statements and representations[2] to Plaintiffs and the Class Members, which misrepresented the legal status of their loans by indicating or implying that the loans were delinquent and that there were other adverse consequences, including late fees, due to the borrower's failure to make periodic payments, as alleged more fully above.

88.     Absent     from     the     mortgage     statements,     representations,     or communications from Defendant were repayment options for Plaintiffs to exit the forbearance plan, such as those required by the CARES Act and related law—i.e., an option to defer the payment to the end of the loan, lengthen the loan term, or defer payment until the sale or refinancing of the home.

89.     Further, the misleading statements that Defendant sent to Plaintiffs and the Class Members misrepresented the "Amount Due" of their periodic mortgage payments in contradiction with the CARES Act, as alleged more fully above.

90.     In so doing, Defendant violated 15 U.S.C. § 1692e(2)(a).

---

[2] The misleading statements included representations that they were being sent by Defendant as a "debt collector" in "an attempt to collect a debt."

91.    Further, the FDCPA prohibits debt collectors from threatening to "take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).

92.    Under the CARES Act, mortgage servicers are required to provide forbearance periods for up to 180 days.

93.    Under the CARES Act, mortgage servicers are required to offer borrowers loss mitigation plans in lieu of foreclosure upon the expiration of their forbearance plan and are not permitted to demand all forbearance payments at the end of a forbearance agreement.[3]

94.    Further, under Sections 4022(b)(3) and (c)(1) of the CARES Act, a mortgage servicer is prohibited from charging any "fees, penalties, or interest" during the span of a borrower's forbearance.

95.    Despite the foregoing, upon information and belief, Defendant did not provide Plaintiffs and Class Members the full 180-day forbearance period and charged late fees for monthly payments during this time period.

96.    Defendant also sent to Plaintiffs and Class Members statements and other representations in which Defendant falsely threatened that if borrowers failed to

---

[3] Consumer Financial Protection Bureau, *Mortgage and Housing Assistance – Exit Your Forbearance*, https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/help-for-homeowners/repay-forbearance/ (last accessed August 18, 2021).

"respond within 30 days, a notice of default may be issued and you may lose your home in foreclosure."

97.    Defendant did not have the legal right to "demand" that Plaintiffs and the Class Members pay the full amount of their delinquency; nor did it have the legal right to charge them "late fees" or proceed to "foreclosure" if Plaintiff and other similarly situated borrowers failed to do so.

98.    In so doing, Defendant violated 15 U.S.C. § 1692e(5).

99.    Further, the FDCPA prohibits debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

100.    By engaging in the above-referenced conduct, Defendant made false representations and employed deceptive means to collect the mortgage obligations of Plaintiff and similarly situated class members during their forbearance plans.

101.    In so doing, Defendant violated 15 U.S.C. § 1692e(10).

102.    As a result of each and every violation of the FDCPA, Plaintiffs and the Class Members are entitled to recover actual damages under 15 U.S.C. § 1692k(a)(1); statutory damages under 15 U.S.C. § 1692k(a)(2)(A) to the full extent provided by law; and reasonable attorneys' fees and costs under 15 U.S.C. § 1692l(a)(3) from Defendant.

## COUNT III
**Violation of the Rosenthal Fair Debt Collection Practices Act**
**Cal. Civ. Code §§ 1788 *et seq.* (Rosenthal Act)**
**(Class and Individual Claim)**

103.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

104.    The Rosenthal Act applies to Defendant because it regularly engages in debt collection as defined by the statute. Cal. Civ. Code § 1788.2.

105.    The mortgage loan of Plaintiffs is consumer debt under the Rosenthal Act. Cal. Civ. Code § 1788.2(e), (f).

106.    At all relevant times, the loan was due or owing at the time in that there were alleged past due payments. *Id.*

107.    The Rosenthal Act makes it illegal for any entity covered by it to engage in conduct prohibited by the FDCPA. Cal. Civ. Code § 1788.17. By engaging in conduct prohibited by the FDCPA as set forth above, Defendant violated the Rosenthal Act.

108.    The Rosenthal Act prohibits "collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14.

109.    When Defendant collected or assessed late fees from Plaintiffs and the Class Members during the period a forbearance plan should have been offered, it

collected (or attempted to collect) fees or charges for services rendered that were not permitted by law under the CARES Act. This conduct violated the Rosenthal Act.

110.    Plaintiffs and the Class Members were harmed when Defendant violated the Rosenthal Act through the above-described conduct.

111.    As a result of each and every violation of the Rosenthal Act, Plaintiffs and the Class Members are entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation, pursuant to Cal. Civ. Code §§ 1788.30(b), 1788.17, and 1788.32, to the full extent provided by law; and reasonable attorneys' fees and costs under Cal. Civ. Code § 1788.30(c).

<u>**COUNT IV**</u>
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(Class and Individual Claim)**

112.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

113.    The California Unfair Competition Law "UCL" defines unfair business competition to include any "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

**Unlawful Prong**

114.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

115.    Defendant's conduct violates the Rosenthal Act, the FDCPA, the FCRA, and the CARES Act as discussed above. These violations are sufficient to support the claims of Plaintiffs and the Class under the unlawful prong of the UCL.

### Unfair Prong

116.    In addition, a business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

117.    Defendant's actions constitute "unfair" business practices because, as alleged above, Defendant engaged in the immoral, unethical, oppressive, and unscrupulous practice of charging late fees not authorized by the Uniform Mortgages or applicable law. Defendant's unfair practice was substantially injurious to consumers, who were forced to pay or were assessed large late fees or lump sums of aggregate monthly payments when their mortgage loans were in forbearance or should have been in forbearance, violating the CARES Act.

118.    As a result of the above conduct, Plaintiffs have suffered economic injury, and Defendant has been unjustly enriched at the expense of Plaintiffs and Class Members. Defendant has been unjustly enriched by obtaining revenues and profits that it would not have obtained otherwise absent its unlawful conduct.

119.    Through its unlawful acts and practices, Defendant has improperly obtained money from Plaintiffs and the Class Members. As such, Plaintiffs request that the Court cause Defendant to restore the money to Plaintiffs and Class Members and

enjoin Defendant from continuing to violate the UCL in the future. The mortgage of Plaintiffs continues to be serviced by Defendant. Absent an injunction, Plaintiffs and the Class Members may be irreparably harmed and/or denied an effective and complete remedy.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and others similarly situated, respectfully request that the Court:

a.    Certify the proposed Class;

b.    Appoint Plaintiffs' counsel as Class Counsel;

c.    Award damages to Plaintiffs and the Class in an amount to be determined at trial;

d.    Award statutory damages and/or penalties to Plaintiffs and the Class as authorized by law;

e.    Permanently enjoin Defendant from the wrongful and unlawful conduct alleged herein;

f.    Award Plaintiffs and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

g.    Award pre- and post-judgment interest to the extent provided by law; and

h.    Award such further relief as the Court deems appropriate.

## **PLAINTIFFS DEMAND A JURY ON ALL ISSUES SO TRIABLE.**

Dated: November 3, 2021                Respectfully Submitted,


  *s/ Benjamin A. Schwartzman*
Benjamin A. Schwartzman (SBN 02161)
BAILEY & GLASSER LLP
950 West Bannock Street, Suite 940
Boise, ID 83702
Telephone: (208) 342-4411
Facsimile: (208) 342-4455
bschwartzman@baileyglasser.com


Lawrence J. Lederer  (*pro hac vice* to be submitted)
James L. Kauffman (*pro hac vice* to be submitted)
Bart D. Cohen (*pro hac vice* to be submitted)
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street NW - Suite 540
Washington, DC  20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
lederer@baileyglasser.com
jkauffman@baileyglasser.com


Brian Mahany (*pro hac vice* to be submitted)
Timothy Granitz (*pro hac vice* to be submitted)
MAHANY LAW
8112 W. Bluemound Road, Suite 101
Milwaukee, WI 53213
Telephone: (414) 258-2375
brian@mahanylaw.com
tgranitz@mahanylaw.com


*Counsel for Plaintiff and the Putative Class*